[Cite as *State v. Hunter*, 2021-Ohio-1714.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Craig R. Baldwin, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020 CA 0056 |
| ROSCOE HUNTER | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Criminal appeal from the Richland County
Court of Common Pleas, Case No.
19CR513

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: May, 18, 2021

APPEARANCES:

For Plaintiff-Appellee

GARY BISHOP
Richland County Prosecutor
38 South Park Street
Mansfield, OH 44902

For Defendant-Appellant

WILLIAM T. CRAMER
470 Olde Worthington Road, Ste. 200
Westerville, OH 43062

*Gwin, J.,*

{¶1} Defendant-appellant Roscoe D. Hunter ["Hunter"] appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas.

*Prelude*

{¶2} In this case we are faced with the question of whether arson and involuntary manslaughter are lesser-included or inferior degree offenses to the charges of aggravated arson and felony murder. We find that under the facts of this case, even assuming *arguendo* that the charges are lesser-included or inferior degree offenses, the evidence was insufficient to warrant charging the jury on a lesser-included or inferior degree offense. The operative facts are not in dispute.

*Facts and Procedural History*

{¶3} On July 29, 2019, Hunter was indicted by the Richland County Grand Jury with Count One: Felony Murder, in violation of R.C. 2903.02(B), an unclassified felony, Count Two: Aggravated Arson,[create a substantial risk of serious physical harm to any person] in violation of R.C. 2909.02(A)(1), a felony of the first degree, and Count Three: Aggravated Arson, [cause physical harm to any occupied structure] in violation of R.C. 2909.02(A)(2), a felony of the second degree.

{¶4} On June 26, 2019, Sydney Riddle lived with her family at 208 South Foster Street where she was babysitting Chloe Williams. Kashawn Hawkins, two-year-old Chloe Williams' mother, was working her regular shift at Newman Technology on June 26, 2019. She and Josh Riddle, Ms. Riddle's husband, worked the second shift together. Ms. Hawkins normally dropped Chloe off around 2:00-2:30 p.m. Normally, when Josh got home, he would quietly go upstairs to get Chloe and bring her down without waking up

the rest of the household and wait for Ms. Hawkins to arrive. That night, however, Josh and Kashawn left work later than they usually did. Josh "start(ed) work at 3:00 p.m. and [got] off at 2:00 a.m."

{¶5} In the early morning hours of on June 26, 2019, Hunter and a juvenile, B.B., left the home of a friend. As the pair were walking, they saw a gas can sitting by a van.

{¶6} Hunter would later claim that he carried the gas can to an abandoned house located at 212 South Foster Street. Hunter claimed that B.B. poured the gasoline in the house, and that Hunter gave B.B. a lighter to ignite the fuel.

{¶7} B.B. testified at trial that it was Hunter who took the gas can. B.B. testified they walked down South Foster Street and Hunter said they should check out the abandoned house located at 212 South Foster Street. After they arrived, they walked through the house and got separated for a moment. B.B. saw Hunter grab a bowl from the kitchen. B.B. watched as Hunter poured gasoline into the bowl and put it on a couch that was in the living room. Hunter then poured the gasoline straight from the can onto the couch. Hunter poured most of the gasoline from the can onto the couch. He then made a little gasoline trail leading to the front door. Hunter threw the empty gas can into the basement. Hunter went to the door and lit the gas trail with a lighter. B.B. denied knowing that Hunter intended to start a fire; he thought they were just checking out the abandoned house. After Hunter lit the fire, the downstairs of the house went up in flames quickly. B.B. testified that as he and Hunter ran out to the street Hunter said it was "too late, they had to go."

{¶8} Sydney Riddle was awakened by pounding on the door. She went downstairs and found a woman at the door. The woman said the house next door is

exploding with fire and they needed to get out because Sydney's house was also on fire. Sydney panicked and began yelling for everyone to wake up and get out. Sydney had to carry her children out. There were already flames coming through their window. Sydney's brother and mother-in-law were also living with them and helped get the children out of the burning house. As they were coming out, the fire trucks were pulling up. It was not until they got everyone across the street that Sydney realized Chloe was still inside. Sydney tried to run back in, but fell down. Sydney's knees and elbows were scraped up from her fall.  Firemen tried to go into the home, but they were unable to make it to the second floor where the infant was sleeping due to the intensity of the fire.

{¶9}    The flames from the fire spread quickly from the abandoned house at 212 South Foster Street to the Riddle's home next door at 208 South Foster Street, fanned in part by the windy conditions at the time and the close proximity of the homes. 3T. at 182; 183; 201; 212-213; 245-246; 271; 314 4T. at 482; 487-488.   Tragically the fire claimed the life of Chloe Williams, the two-year old infant who was sleeping in that home. The fire did extensive damage to 208 South Foster where the Riddle family lived and the child had died. "The living room wall that faced 212 [South Foster] was gone. It was just studs. All the carpet and everything on that side of the house melted. The toy box was over there, and all the toys were melted to the floor. The kitchen was completely gone. Like, everything was charred, black smoke, water-filled.... Every single room in that house was destroyed." 3T. at 248. After the fire, the landlord of 208 South Foster decided to tear it down. Id. at 247.

{¶10}  Cody Brownfield was a few houses down on South Foster Street on the morning after the fire. As soon as he could, at approximately 11:30 A.M. to 12:00 noon,

he flagged down an officer. He eventually spoke with Lieutenant Robert Skropits, who is in charge of the Major Crimes Division at the Mansfield Police Department.  He gave Lieutenant Skropits Hunter's name.  He told the officer that Hunter had been at his house the night before with friends, and that Hunter told him that he was going to burn down the "bando[1]." Cody later testified that Hunter had been talking about it for over a week.

{¶11}  B.B. admitted that he was not truthful when he first spoke to law enforcement. B.B. said he was under pressure. B.B. claimed that he eventually told the truth. B.B. was charged with two counts of aggravated arson as a second-degree felony and a fourth-degree felony. However, his charges were reduced to fifth-degree felony vandalism and breaking and entering in exchange for his testimony against Hunter. B.B. was sentenced to probation and spent six months in detention.

{¶12}  Hunter was surprised at how big the fire was and insisted that he did not mean to burn down the occupied house next door. Later, as Hunter was talking to his mother on the phone from jail while awaiting trial. His mother said she and the attorney looked at the indictment and she believed the charges didn't apply to him. Hunter said, "They do....They apply, Mom....Murder — we burnt down a house and killed somebody." 5T. at 700; State's Exhibit 115.

{¶13}  On July 27, 2020, the jury came back with a verdict of guilty on all counts as charged in the indictment. The trial court merged Count Two with Count One and Hunter was sentenced to fifteen years to life on Count One. As to Count Three, Aggravated Arson, referring to causing physical harm to an occupied structure, the court

---

[1] "Bando" is slang for an abandoned house. 3T. at 311.

sentenced Hunter to eight to twelve years in prison. The court ordered the sentences to run consecutively.

*Assignments of Error*

{¶14} Hunter raises two Assignments of Error,

{¶15} "I. THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE LESSER OFFENSES OF ARSON AND INVOLUNTARY MANSLAUGHTER.

{¶16} "II. APPELLANT WAS DEPRIVED OF HIS FEDERAL AND STATE RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S FAILURE TO ARGUE THAT ARSON WAS AN INFERIOR DEGREE OFFENSE TO AGGRAVATED ARSON."

I.

{¶17} Prior to trial, the defense requested a jury instruction on the lesser included offense of arson under R.C. 2909.03(B)(1). On a break during trial, the court discussed the requested jury instructions and concluded that arson was not a lesser included offense of aggravated arson because they had different elements: aggravated arson requires causing a risk of harm to a person or causing harm to an occupied structure, while arson requires the burning of an unoccupied structure. Therefore, because the court did not believe a lesser included offense instruction on arson was appropriate, it concluded that it could not provide a lesser included offense instruction on involuntary manslaughter. 5T at 579-583. At the close of the state's case, the defense renewed its request for a lesser included offense instruction on involuntary manslaughter based on arson. Again, the trial court denied the request, concluding that there was no basis for instructions on arson and involuntary manslaughter. 6T. at 738-740.

{¶18} In his First Assignment of Error, Hunter contends that because the evidence at trial suggested that he was not aware that the fire would probably spread to the neighboring house, such evidence would support acquittals on the two aggravated arson charges and a finding of guilty on the lesser or inferior degree offense of arson. As a result, the trial court should have given a jury instruction on arson as an inferior degree or lesser offense to the aggravated arson charges. Hunter then argues that the jury should have been instructed on the offense of involuntary manslaughter contending that if the jury found him guilty of aggravated arson, then felony-murder was appropriate; however, if the jury found him guilty of only arson, then a jury could convict him of involuntary manslaughter as a lesser or inferior offense to the felony murder count in the indictment.

**Standard of Review – Jury Instructions**

{¶19} An appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989); *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶240. An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54. Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792(1988).

{¶20} In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35(1999) the United States Supreme Court held that because the failure to properly

instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not *necessarily* render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

**Issue for Appellate Review:** *Whether the trial court abused its discretion by failing to instruct the jury on the offenses of arson and involuntary manslaughter.*

### 1. Lesser -included offenses.

{¶21} Hunter was indicted and found guilty of two counts of Aggravated Arson pursuant to R.C. 2909.02,

> (A) No person, by means of fire or explosion, shall knowingly do any
>
> of the following:
>
> (1) Create a substantial risk of serious physical harm to any person
>
> other than the offender;
>
> (2) Cause physical harm to any occupied structure...

{¶22} Hunter argues that the trial court abused its discretion by not charging the jury on the lesser or inferior offense of arson pursuant to R.C.2909.03,[2]

> * * *
>
> (B) No person, by means of fire or explosion, shall knowingly do any
>
> of the following:
>
> (1) Cause, or create a substantial risk of, physical harm to any
>
> structure of another that is not an occupied structure....

---

[2] Appellant's brief at 15.

{¶23} "Ohio law permits a trier of fact to consider three types of lesser offenses when determining a defendant's guilt: '(1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; or (3) lesser included offenses.' *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus, construing R.C. 2945.74 and Ohio Crim.R. 31(C)". *Shaker Heights v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶10.

{¶24} "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. In making this determination, the court must view the evidence in a light most favorable to defendant. *State v. Smith*, 89 Ohio St.3d 323, 331, 731 N.E.2d 645(2000); *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303(1980).

{¶25} The Ohio Supreme Court has cautioned,

Past decisions of this court have sometimes given the erroneous impression that, whenever there is "some evidence" that a defendant in a murder prosecution may have acted in such a way as to satisfy the requirements of the voluntary manslaughter statute, an instruction on the inferior-degree offense of voluntary manslaughter must always be given. See, *e.g., State v. Muscatello* (1978), 55 Ohio St.2d 201, 9 O.O.3d 148, 378 N.E.2d 738, paragraph four of the syllabus. See, also, *Tyler, supra,* 50 Ohio St.3d at 37, 553 N.E.2d at 592. That clearly never has been the law in this

state, nor is it the law today. The "some evidence" referred to in those cases is simply an abbreviated way of saying that a jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense.

To require an instruction to be given to the jury every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense. Trial judges are frequently required to decide what lesser-included (or inferior-degree) offenses must go to the jury and which must not. The jury would be unduly confused if it had to consider the option of guilty on a lesser included (or inferior-degree) offense when it could not reasonably return such a verdict.

*State v. Shane*, 63 Ohio St.3d at 632-633, 590 N.E.2d 272 (emphasis in original).

{¶26} In the case at bar, the evidence proved that Hunter set a gasoline fire inside of the unoccupied structure located at 212 South Foster Street. Hunter concedes that this evidence is sufficient to prove the offense of arson. (Appellant's brief at 22). The question then becomes whether Hunter, by means of a fire or explosion that he had set in the unoccupied structure located at 212 South Foster Street, *knowingly* created a substantial risk of serious physical harm to the occupants of 208 South Foster Street [(R.C. 2909.02(A)(1)] and/or *knowingly* caused physical harm to the occupied structure located

at 208 South Foster Street [R.C.2909/02(A)(2)]. In other words, assuming *arguendo* that arson is a lesser or inferior degree of aggravated arson, would the evidence presented at trial reasonably support both an acquittal on the crimes of aggravated arson and a conviction upon the purported inferior degree or lesser included offense of arson.

### 2. Knowingly

{¶27} R.C. 2901.22, Culpable mental states provides,

(B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶28} In her concurring opinion in *State v. Clay*, Justice Lanzinger explained,

Awareness, then, is key to both definitions. It is the level of awareness, however, that separates the two levels: "'if the result is probable, the person acts "knowingly"; if it is not probable, but only possible, the person acts "recklessly" if he chooses to ignore the risk.'" *In re Judicial Campaign Complaint Against Emrich* (1996), 75 Ohio St.3d 1517, 1519, 665 N.E.2d 1133, *quoting State v. Edwards* (1992), 83 Ohio App.3d 357, 361, 614 N.E.2d 1123.

120 Ohio St.3d 258, 2008-Ohio-6325, 900 N.E.2d 1000, ¶32. Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist. 2001) (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. Montgomery No. 16221, 1998 WL 214606 (May 1, 1998), *citing State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412 (10th Dist. 1995).

{¶29} In the case at bar, Hunter used gasoline as an accelerant. Gasoline is one of the most volatile, flammable and combustible liquids. 4T. at 490. Gasoline causes instantaneous ignition. 4T. at 486. The fire grows in size and consumes any fuel around it and continues to burn. 4T. at 487. The temperature of the fire in this case exceeded 1200 degrees Fahrenheit. 4T. at 485. The unoccupied structure at 212 South Foster Street was constructed of wood and furniture was located throughout the inside of the building. 4T. at 488. The two structures were located in close proximity, only a small narrow driveway separated the buildings that were estimated to be at most only 14 to 16 feet apart. 3T. at 183; 212-213; 245-246; 4T. at 488. Further, the evidence presented at trial established that the wind was blowing in the direction of the occupied structure on the night of the fire. 3T. at 182; 201; 271; 314; 4T. at 482.

{¶30} For the violation of R.C. 2909.02(A)(1), the state had to prove that the fire caused a substantial risk of serious physical harm to any person. In this regard, the evidence was undisputed that the two-year old infant died from the effects of the fire and thus suffered serious physical harm. For the violation of R.C. 2909.02(A)(2), the state had

to prove physical harm to any occupied structure. It was also undisputed that the fire caused considerable physical damage to 208 South Foster Street.

{¶31}　The evidence presented at trial established that because of the accelerant that was used, the wind, and the close proximity of the buildings, there was a high probability the fire would spread from the unoccupied structure to the occupied structure and that Hunter failed to ascertain those facts or that he acted with a conscious purpose to avoid learning those facts. Deliberate ignorance or indifference cannot be a viable defense. Thus, the evidence submitted at trial would *not* support an acquittal on the counts of aggravated arson. Because the aggravated arson instruction was appropriate, there is no merit to the argument that Hunter was entitled to an instruction on involuntary manslaughter.　*State v. Parker,* 12 Dist. Butler No. 2017-12-176, 2019-Ohio-830, ¶60.

{¶32}　Hunter's First Assignment of Error is overruled.

II.

{¶33}　In his Second Assignment of Error, Hunter contends that by failing to argue that arson is an inferior degree of aggravated arson trial counsel's representation fell below an objective standard of reasonable representation.

**Standard of Appellate Review**

{¶34}　A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness.　*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶35} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. *Lockhart v. Fretwell*, 506 U .S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180(1993).

{¶36} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court " * * * need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, *quoting Strickland* at 697.

{¶37} Having reviewed the record that Hunter cites in support of his claim that he was denied effective assistance of counsel, we find Hunter was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

{¶38} As we found in our disposition of Hunter's First Assignment of Error, the evidence submitted at trial would not support an acquittal on the counts of aggravated arson. Because the aggravated arson instruction was appropriate, there is no merit to the argument that Hunter was entitled to an instruction on involuntary manslaughter. Therefore, trial counsel's failing to argue that arson is an inferior degree of aggravated arson did not prejudice Hunter.

{¶39} Hunter's Second Assignment of Error is overruled.

{¶40} The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, J.,

Baldwin, P.J., and

Delaney, J., concur