[Cite as *State v. Ankrom*, 2025-Ohio-4488.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO <br><br> Plaintiff - Appellee <br><br> -vs- <br><br> LEBRYANT ANKROM <br><br> Defendant – Appellant | Case No. CT2025-0041 <br><br> <u>Opinion And Judgment Entry</u> <br><br> Appeal from the Muskingum County Court of Common Pleas, Case No. CR2024-0777 <br><br> Judgment:   Affirmed <br><br> Date of Judgment Entry: September 25, 2025 |

**BEFORE:** CRAIG R. BALDWIN, P.J.; ANDREW J. KING, J.; KEVIN W. POPHAM, J., Appellate Judges

**APPEARANCES:** RON WELCH, BY JOSEPH PALMER for Plaintiff-Appellee; CHRIS BRIGDON, for Defendant-Appellant


OPINION

*Popham, J.*

{¶1}   Defendant-Appellant Lebryant Ankrom ("Ankrom")[1] appeals his conviction and sentence after a jury trial in the Muskingum County Court of Common Pleas.  For the reasons that follow, we affirm.

*Facts and Procedural History*

{¶2}   On December 12, 2024, the Muskingum County Grand Jury indicted Ankrom on three counts: (1) Aggravated burglary, a first-degree felony in violation of R.C. 2911.11(A)(1)/(B); (2) Felonious assault, a second-degree felony in violation of R.C.

---

[1] We note that the Transcript refers to Appellant as "Ankron;" however, the Indictment lists Appellant as "Ankrom." We shall refer to Appellant as "Ankrom" throughout this Opinion.

2903.11(A)(1)/(D)(1)(a); and (3) Assault, a first-degree misdemeanor in violation of R.C. 2903.13(A)/(C).

{¶3}    The matter proceeded to a jury trial beginning on February 18, 2025.

**Police Response to 9-1-1 Call**

{¶4}    The events at issue occurred on December 2, 2024.  At approximately 7:17 a.m., Patrolman Byron Bollinger of the Zanesville Police Department was dispatched to 944 West Muskingum Avenue in response to a 9-1-1 call.  *Trial Transcript* ("*T.*") at 141. The residence was a boarding house with multiple residents paying rent to reside in various rooms inside the residence.  *T.* at 167-168; 205-206; 207.

{¶5}    Upon arrival, Patrolman Bollinger encountered Ankrom outside the residence.  Ankrom appeared visibly upset and stated that he wanted two individuals— later identified as Chad Lent and Stephanie Athey—removed from the property. *T.* at 146-147. Ankrom was not the landlord, and he did not have authority to banish tenants from the residence.  *Id.* at 165.

{¶6}    Inside, Bollinger found Lent[2] seated in the kitchen, slouched over with his head down, and struggling to speak.  *T.* at 147-148.  Lent exhibited significant injuries, including facial bleeding, a swollen eye, a laceration beneath the eye, and bruising— consistent with a recent assault. *Id.* at 148-149.  When asked what had happened, Bollinger testified that Lent pointed to Ankrom and identified him as the assailant, although he was unable to provide additional details because of his condition. *Id.* at 148-151.

---

[2] Lent did not testify at trial.

{¶7} Paramedics transported Lent to a local hospital for treatment. He later required stitches and further care at The Ohio State University Hospital. *T.* at 150, 195; State's Exhibits C1, D1-D3.

{¶8} Patrolman Bollinger then spoke with Athey, who reported that she also had been assaulted by Ankrom. *T.* at 153-154. Bollinger observed injuries to her lip and nose, which were documented in photographs admitted into evidence. *Id.* at 154; State's Exhibits D4-D5.

**Testimony of Stephanie Athey**

{¶9} The State presented testimony from Athey. She explained that she and Ankrom previously shared a room at the boarding house, but she moved to another part of the residence after a [previous] physical altercation with Ankrom. *T.* at 168, 170. Athey testified she was again forced to relocate to another part of the residence after Ankrom had acted inappropriately toward her. *Id.* at 173. Athey emphasized that she never had a romantic relationship with Ankrom. *Id.* at 171, 185-186.

{¶10} Regarding the incident, Athey testified that on December 2, 2024, she and Lent were lying down in her makeshift living area when Ankrom entered without warning. *T.* at 174. According to Athey, Ankrom immediately began punching Lent, who was asleep at the time. *Id.* at 175. Athey testified that she attempted to intervene and pleaded with Ankrom to stop, but Ankrom punched her in the mouth. *Id.* at 176.

{¶11} Athey testified that she then picked up a metal bed-frame support, which caused Ankrom to back away. *T.* at 176-177. She called 9-1-1 but withheld her name, fearing there was an active warrant for her arrest. *Id.* at 177, 180; State's Exhibit B. During the call, she described the assailant only as "some dude." *Id.* Athey testified that

she suffered sustained six chipped teeth as a result of being punched by Ankrom. *Id.* at 186.

**Testimony of Ankrom**

{¶12} Ankrom testified in his own defense, denying any role in the assaults. *T.* at 211. He acknowledged being initially interested in Athey but explained that after their prior altercation, during which Athey called the police, she was no longer allowed in his room. *Id*. at 207-208.

{¶13} Ankrom testified that he met Lent only a few days before the incident. *T.* at 209-210. He testified that Lent had mentioned knowing Athey, although Athey denied any such acquaintance. *Id.* at 210. Ankrom denied harboring any jealousy toward Lent. *Id.* at 210-211.

{¶14} According to Ankrom, on the day in question, Athey and Lent began blaming him for their problems, saying, "You're the reason we always fight; you're the reason why we have nothing," and became belligerent. *T.* at 212.

{¶15} Ankrom stressed that he stayed at the scene, cooperated with law enforcement, and made no attempt to flee despite having an opportunity to do so during the five minutes between the 9-1-1 call and the officers' arrival. *T.* at 159-160. He further testified that he had no blood on his person or clothing, and the police did not observe or document any blood on him or his clothing. *Id.* at 214-215.

**Verdict and Sentence**

{¶16} The jury returned verdicts of guilty on all three counts: aggravated burglary, felonious assault, and assault. The court deferred sentencing pending completion of a presentence investigation report.

{¶17} On March 31, 2025, the trial court sentenced Ankrom to an indefinite term of eleven years, with a potential maximum term of sixteen and one-half years, for aggravated burglary; a definite term of eight years for felonious assault; and 180 days for assault. The sentences for aggravated burglary and felonious assault were ordered to run consecutively, resulting in an aggregate indefinite term of nineteen years, with a maximum potential term of twenty-four and one-half years.

*Assignments of Error*

{¶18} Ankrom raises three assignments of error for our consideration,

{¶19} "I. INSUFFICIENT EVIDENCE AS IT RELATES TO COUNTS 1, 2, AND 3: AGGRAVATED BURGLARY, FELONIOUS ASSAULT, AND ASSAULT IN VIOLATION OF O.R.C. 2911.11(A)(1), 2903.11(A)(1), AND 2903.13(A)."

{¶20} "II. THE JURY'S VERDICTS ON COUNTS 1, 2, AND 3 WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS THE EVIDENCE SUGGESTS A FIGHT BETWEEN THE ALLEGED VICTIMS AND FAILS TO SUPPORT ANKROM'S GUILT BEYOND A REASONABLE DOUBT."

{¶21} "III. THE TRIAL COURT ABUSE ITS DISCRETION BY IMPOSING MAXIMUM SENTENCES OF 11 YEARS FOR AGGRAVATED BURGLARY (O.R.C. § 2911.11(A)(1)) AND 8 YEARS FOR FELONIOUS ASSAULT (O.R.C. § 2903.11(A)(1)), CONTRARY TO O.R.C. §2929.11 AND §2929.12, WHEN THE WEAK EVIDENCE, ANKROM'S BACKGROUND, AND HIS COOPERATION DO NOT JUSTIFY SUCH SEVERE TERMS."

I.

{¶22} Ankrom first argues that his convictions for aggravated burglary, felonious assault and assault are not supported by sufficient evidence. We disagree.

**Standard of Appellate Review – Sufficiency of the Evidence**

{¶23} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury ***." This right, along with the Due Process Clause, requires the State to prove each element of a crime to a jury beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 509-510 (1995); *Hurst v. Florida*, 577 U.S. 92 (2016).

{¶24} Sufficiency of the evidence is a question of law reviewed de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13. The review entails examining the elements of the offense and the evidence presented at trial. *State v. Richardson*, 2016-Ohio-8448, ¶ 13.

{¶25} In assessing sufficiency, an appellate court does not weigh credibility. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded on other grounds by constitutional amendment as stated in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997); Walker, ¶ 30.* The question is whether, viewing the evidence in the light most favorable to the prosecution, a rational jury could have found the defendant guilty beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001), citing *Jenks*; *see also Walker*, ¶ 31; *State v. Poutney*, 2018-Ohio-22, ¶ 19.

{¶26} A verdict will be upheld unless "reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Ketterer*, 2006-Ohio-5283, ¶ 94, quoting

*State v. Dennis*, 79 Ohio St.3d 421, 430 (1997); *accord State v. Montgomery*, 2016-Ohio-5487, ¶ 74.

**Aggravated Burglary**

{¶27} To sustain a conviction for aggravated burglary under R.C. 2911.11(A)(1), the State was required to prove beyond a reasonable doubt that Ankrom:

1. By force, stealth, or deception, trespassed in an occupied structure or in a separately secured or separately occupied portion thereof;

2. While another person, other than an accomplice, was present;

3. With the purpose to commit a criminal offense inside; and

4. Inflicted, attempted to inflict, or threatened to inflict physical harm on another.

**Definition of Occupied Structure**

{¶28} R.C. 2909.01(C) defines "occupied structure" as:

Any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

(1) It is maintained as a permanent or temporary dwelling, even if temporarily unoccupied and whether or not any person is actually present.

(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

(4) At the time, any person is present or likely to be present in it.

{¶29} R.C. 2909.01(C) defines "occupied structure" broadly to include not only houses and buildings but also temporary dwellings and spaces adapted for overnight accommodation. The Supreme Court of Ohio in *State v. Fazenbaker* emphasized the expansive nature of this definition:

> Although R.C. 2909.01(C) refers to objects that are widely thought of as structures, such as houses and buildings, it also refers to temporary dwellings like tents, as well as objects that can be physically occupied but that are not normally thought of as structures or dwelling places, such as vehicles and watercraft.

2020-Ohio-6731, ¶11.

{¶30} Thus, an improvised living space can qualify as an "occupied structure" if it serves as a person's habitation or is adapted for overnight use.

**Application to the Present Case**

{¶31} The record establishes that the residence functioned as a boarding house with multiple tenants. *T.* at 167, 205-206. Stephanie Athey testified that, at the time of the incident, because all the residence's bedrooms were occupied, she lived in a downstairs hallway she had converted into her private living quarters. *T.* at 171-172. She created partitions by hanging blankets and using a piece of siding to form walls. *Id.* at 172-173, 182; State's Exhibit D8. Inside this space, Athey kept two twin beds on a queen-size frame, clothing, and a heater. *Id.* at 173.

{¶32} These facts demonstrate that Athey's area was specially adapted for overnight accommodation and served as her temporary habitation. Accordingly, it falls squarely within the statutory definition of an "occupied structure."

{¶33} Athey also testified that Ankrom did not have permission to enter her space. *T*. at 186. Nevertheless, Ankrom forcibly entered Athey's space by tearing down the makeshift partitions. *Id.* at 175. Upon entry, he immediately attacked Athey and Chad Lent. *Id*. This conduct satisfies the statutory requirement that the trespass occur by force and that physical harm be inflicted or attempted.

{¶34} When viewed in the light most favorable to the prosecution, this evidence was more than sufficient for a rational trier of fact to conclude that Ankrom trespassed by force in an occupied structure, while another person was present, with the purpose to commit a criminal offense, and that he inflicted or at least attempted to inflict physical harm on both Chad Lent and Stephanie Athey.

{¶35} Accordingly, the State met its burden of proof on each element of aggravated burglary. The trial court properly submitted the charge to the jury, and the evidence supports Ankrom's conviction.

**Felonious Assault**

{¶36} To prove the R.C. 2903.11(A)(1) felonious assault charge, the State was required to prove beyond a reasonable doubt that Ankrom knowingly, "cause[d] serious physical harm to another or another's unborn." R.C. 2903.11(A)(1). R.C. 2901.01(A)(5) defines "serious physical harm to persons" as "... (b) [a]ny physical harm that carries a substantial risk of death; (c) [a]ny physical harm that ... involves some temporary, substantial incapacity ... (e) [a]ny physical harm that involves acute pain of such duration

as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

{¶37} Ankrom concedes that Chad Lent's injuries were severe, involving significant blood loss and requiring hospitalization. (Appellant's brief at 8). Ankrom argues, however, the State failed to prove beyond a reasonable doubt that he inflicted Lent's injuries. *Id.*

{¶38} The State must prove every element of the charged offense beyond a reasonable doubt, including the identity of the person who committed it. *State v. Tate*, 2014-Ohio-3667, ¶ 15 (internal citations omitted). That identity can be established through either direct or circumstantial evidence. *Id.* at ¶19; *State v. Stearns*, 2024-Ohio-714, ¶ 27 (5th Dist.); *State v. Ray,* 2025-Ohio-2023, ¶ 42 (5th Dist.).

{¶39} Evidence was introduced during Ankrom's jury trial that Lent identified Ankrom as his attacker. *T.* at 148-151. Stephanie Athey also witnessed Ankrom's assault on Lent. *Id.* at 174-177. Lent was treated at a local hospital but was later transferred to The Ohio State University Hospital. *Id.* at 150, 195. Photographs showing Lent's injuries both at the scene, and while hospitalized were admitted into evidence. State's Exhibits C1, D1-D3.

{¶40} When viewed in the light most favorable to the prosecution, this evidence was more than sufficient for a rational trier of fact to conclude that Ankrom knowingly caused serious physical harm to Lent.

{¶41} Accordingly, the State met its burden of proof on each element of felonious assault. The trial court properly submitted the charge to the jury, and the evidence supports Ankrom's conviction.

**Assault**

{¶42}  To prove the R.C. 2903.13(A) assault charge, the State was required to prove beyond a reasonable doubt that Ankrom knowingly caused or attempted to cause physical harm to Stephanie Athey. R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶43}  Athey testified that Ankrom punched her in the mouth, resulting in six chipped teeth.  *T.* at 176, 186.

{¶44}  When viewed in the light most favorable to the prosecution, this evidence was more than sufficient for a rational trier of fact to conclude that Ankrom caused physical harm to Athey.

{¶45}  Accordingly, the State met its burden of proof on each element of assault. The trial court properly submitted the charge to the jury, and the evidence supports Ankrom's conviction.

{¶46}  Ankrom's first assignment of error is overruled.

II.

{¶47}  In his second assignment of error, Ankrom contends that his convictions are against the manifest weight of the evidence.  Specifically, he argues that the State presented no physical evidence proving he caused the injuries to Lent and Athey, that Athey did not identify him during her 9-1-1 call, and that the evidence suggests Lent and Athey were involved in a romantic relationship and injured each other during a fight.

**Standard of Appellate Review –Manifest Weight of the Evidence**

{¶48}  The term "manifest weight of the evidence" relates to persuasion.  *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19.  It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith,* 80 Ohio St.3d 89, 102 n.4 (1997); *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶49}  When reviewing the manifest weight of the evidence, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient.  *Thompkins* at 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

{¶50}  Appellate courts have traditionally presumed the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in evaluating credibility. *Eastley* at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶51}  The Supreme Court of Ohio reiterated that an appellate court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Jordan*, 2023-Ohio-3800, ¶ 17.  The Court specifically directed, "'Sitting as the "thirteenth juror,"' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with

the trier of fact's conclusion." *Id., citing State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Sheppard,* 2025-Ohio-2747, ¶ 24 (5th Dist.).

{¶52} A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387 [internal quotations omitted].

{¶53} To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2-4, *citing Thompkins*, syllabus ¶ 4.

{¶54} The jury, as the trier of fact, is charged with evaluating the evidence, determining witness credibility, and resolving conflicts in testimony. It was free to believe all, part, or none of the testimony presented. *See State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.), citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). The law is clear that inconsistencies in testimony do not automatically render a conviction against the manifest weight of the evidence. *State v. Craig*, 1999 WL 29752 (10th Dist. Mar. 23, 2000), citing *State v. Nivens*, 1996 WL 284714 (10th Dist. May 28, 1996).

{¶55} Although the State's case relied in part on circumstantial evidence, that does not diminish its probative value. The Supreme Court of Ohio has long held that circumstantial evidence carries the same weight as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991), paragraph one of the syllabus*, superseded on other grounds by constitutional amendment as recognized in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997).*

{¶56} Here, Athey and Ankrom both testified at trial and were thoroughly cross-examined. The jury had the opportunity to observe their demeanor, assess their candor,

and consider any potential bias. In addition, the State introduced photographs of the injuries sustained by both Lent and Athey, allowing the jury to evaluate the nature and extent of those injuries for themselves.

{¶57} Having independently reviewed the entire record, weighed the evidence and reasonable inferences, and considered the witness' credibility as a "thirteenth juror," we find no compelling indication that the jury lost its way or created a manifest miscarriage of justice. To the contrary, the greater weight of credible evidence supports the verdict.

{¶58} Ankrom's second assignment of error is overruled.

III.

{¶59} In his third assignment of error, Ankrom contends that the trial judge failed to comply with the purposes and principles of sentencing as set forth in R.C. 2929.11 and R.C. 2929.12 when sentencing him to maximum sentences for aggravated burglary and felonious assault.[3] We disagree.

### Standard of Appellate Review – Maximum Sentences

{¶60} Under R.C. 2953.08(A)(1), a defendant may appeal a maximum sentence as of right. Pursuant to R.C. 2953.08(F), we review the entire record, including oral and written statements, and the presentence investigation report. *See State v. Jones*, 2020-Ohio-6729, ¶ 36; *State v. Howell*, 2015-Ohio-4049, ¶ 31 (5th Dist.).

{¶61} An appellate court may modify or vacate a sentence if it clearly and convincingly finds that the record does not support the trial court's findings under certain statutory provisions, or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2); *State v. Bonnell*, 2014-Ohio-3177, ¶ 28. "Clear and convincing evidence" is that which

---

[3] Ankrom does not challenge the trial court's imposition of consecutive sentences.

produces a firm belief or conviction. *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). A sentence is "contrary to law" if it violates a statute. *Jones* at ¶ 34.

{¶62} An appellate court may not modify a sentence simply because it disagrees with the trial court's weighing of R.C. 2929.11 and 2929.12 factors. *Jones* at ¶ 39. However, if a sentence is based on factors extraneous to those statutes, it is contrary to law and reviewable. *State v. Bryant*, 2022-Ohio-1878, ¶ 22.

**Purposes and Principles of Felony Sentencing - R.C. 2929.11**

{¶63} R.C. 2929.11(A) provides that felony sentences must be reasonably calculated to achieve the two overriding purposes of felony sentencing: (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions the court determines will accomplish those purposes. In doing so, the trial court must consider the need to incapacitate the offender, deter future crime by the offender and others, rehabilitate the offender, and provide restitution to the victim, the public, or both.

{¶64} In addition, R.C. 2929.11(B) requires that a sentence be commensurate with, and not demeaning the seriousness of, the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

**Seriousness and Recidivism – R.C. 2929.12**

{¶65} R.C. 2929.12 provides guidance regarding the seriousness of the offense and the likelihood of recidivism. Subsections (B) and (C) list factors indicating whether the offender's conduct is more or less serious than conduct normally constituting the offense. These factors include: the victim's age; the physical, psychological, or economic

harm to the victim; whether the offender's relationship with the victim facilitated the offense; the offender's criminal record; whether the offender was under court sanction at the time; expressions of remorse; and any other relevant factors.

{¶66} Subsections (D) and (E) address factors that indicate whether the offender is likely—or not likely—to commit future crimes.

**Application To This Case**

{¶67} The court sentenced Ankrom to the maximum minimum term for a felony of the first degree - 11 years on Count One, and to the maximum minimum sentence for a felony of the second degree - 8 years on Count Two. Because Ankrom was being sentenced for more than one felony, one of which was a felony of the first or second degree, and because the court determined that the sentences for both felonies would run consecutively, R.C. 2929.144(B)(2) provides the formula for determining the maximum aggregate sentence in this case. It states,

> (2) If the offender is being sentenced for more than one felony, if one or more of the felonies is a qualifying felony of the first or second degree, and if the court orders that some or all of the prison terms imposed are to be served consecutively, the court shall add all of the minimum terms imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree that are to be served consecutively and all of the definite terms of the felonies that are not qualifying felonies of the first or second degree that are to be served consecutively, *and the maximum term shall be equal to the total of*

*those terms so added by the court plus fifty per cent of the longest minimum*

*term or definite term for the most serious felony being sentenced.*

Emphasis added.

{¶68} Thus, the maximum aggregate term in the case at bar is the minimum term of eleven years on Count One plus the minimum term on Count Two of eight years equaling nineteen years, plus 50% of the longest term - eleven years on count one – equaling five and one-half years, totaling a potential aggregate maximum term of twenty-four and one-half years.

{¶69} A trial court's imposition of a potential maximum prison term for a felony conviction is not contrary to law if the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12. *State v. Keith*, 2016-Ohio-5234, ¶¶ 10, 16 (8th Dist.); *State v. Taylor*, 2017-Ohio-8996, ¶ 16 (5th Dist.).

{¶70} However, neither R.C. 2929.11 nor R.C. 2929.12 requires the trial court to make specific factual findings on the record. *Jones,* 2020-Ohio-6729, ¶ 20, citing *State v. Wilson*, 2011-Ohio-2669, ¶ 31, and *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). The trial court must "consider" the relevant statutory factors, but it need not make factual findings or recite them on the record. *State v. Bement*, 2013-Ohio-5437, ¶ 17 (8th Dist.); *State v. Combs*, 2014-Ohio-497, ¶ 52 (8th Dist.). The trial court has no obligation to state reasons to support its findings, nor is it required to give a talismanic recitation of the statute, so long as the necessary findings can be found in the record and are incorporated

into the sentencing entry. *State v. Webb*, 2019-Ohio-4195, ¶ 19 (5th Dist.); *State v. Clanin*, 2024-Ohio-2445, ¶ 14 (5th Dist.).

{¶71} Even if the sentencing transcript were silent as to the statutory factors, this Court has recognized a presumption that the trial court considered the factors where the sentencing entry indicates as such. *See State v. Hannah*, 2015-Ohio-4438, ¶ 13 (5th Dist.); *State v. Robinson*, 2013-Ohio-2893, ¶ 20 (5th Dist.); *State v. Crawford*, 2022-Ohio-3125, ¶ 18 (5th Dist.); *State v. Dale*, 2022-Ohio-4074, ¶ 12 (5th Dist.); *State v. Blosser*, 2024-Ohio-173, ¶¶ 16-17 (5th Dist.).

{¶72} Here, the trial court reviewed the presentence investigation report that noted Ankrom's criminal history dating back to 2010 in Ohio and California. *Sent. T.* at 11-12. The trial court considered the difficulties Ankrom encountered throughout his life, and that he was well behaved during trial. *Id.* at 13. The trial court found the harm inflicted by Ankrom upon the victims was significant. *Id.* at 14.

{¶73} Upon review, we find that the trial court's maximum potential sentence of eleven years on Count One, maximum sentence of eight years on Count Two, and the maximum potential aggregate sentence of twenty-four and one-half years, follows applicable rules and sentencing statutes. The sentence was within the statutory sentencing range, and Ankrom has not shown that the trial court imposed the sentence based on impermissible considerations. Therefore, we have no basis for concluding that the sentence is contrary to law.

{¶74} Ankrom's third assignment of error is overruled.

{¶75} The judgment of the Muskingum County Court of Common Pleas is affirmed.

For the reasons stated in our accompanying Opinion, the judgment of the Muskingum County Court of Common Pleas is affirmed.

Costs to Appellant.

By: Popham, J.

Baldwin, P.J. and

King, J. concur.